**WINTHROP SALES CORPORATION, a corporation, Plaintiff-Appellant,**

v.

**Arnold D. SHELTON et al., Defendant-Respondent.**

**No. 8384.**

Springfield Court of Appeals.

Missouri.

March 29, 1965.

J. Roger Buck, Kansas City, for plaintiff-appellant.

Robert P. Warden, Richart, Titus & Martin, Joplin, for defendant-respondent.

RUARK, Presiding Judge.

This is an appeal by plaintiff Winthrop Sales from an order quashing an execution which had been issued against defendant Shelton.

On *January 22, 1962,* plaintiff filed suit against defendants Shelton and Greenwell. The petition alleged in substance that plaintiff leased from defendants certain designated space in defendants' men's wear store in Joplin, Missouri, for a definite period. The written lease was attached to and made a part of the petition. Under the provisions of such lease, plaintiff installed a stock of shoes with fixtures and equipment in the space so leased. Title to the merchandise was to remain in the plaintiff until sold, but defendants were to sell the same in the course of business. All funds received from such sales were to be held in trust for plaintiff and not com-

mingled with defendants' funds, but instead were to be deposited daily in a separate special bank account in a designated bank. Defendants were to make regular written reports and monthly remittance to the plaintiff. As payment for rental and for services in selling the merchandise, defendants were to receive eighteen per cent of the net sales. The agreement provided that in the event of insolvency or bankruptcy all funds so held in trust were to be paid over immediately to the plaintiff, and not paid over to or listed as defendants' assets with any receiver, trustee, assignee, or other person. The petition then charged that it did install the stock of merchandise, equipment, and fixtures, but that defendants failed to hold the funds received from sale in trust, but instead did wrongfully and illegally convert such to their own use and did wrongfully and illegally convert to their own use and dispose of the stock of merchandise, furniture and fixtures (the items were listed) of a total value of $3,166.72, for which it prayed judgment.

On *February 5, 1962,* defendants filed separate motions to dismiss. Defendant Shelton's motion was based on the general ground that the petition failed to state a cause of action or grounds upon which the court could grant relief.

On *June 22, 1962,* defendant Shelton filed petition in bankruptcy and was adjudged a bankrupt.

On *July 8, 1963,* the motions were overruled and defendants were granted twenty days to plead. Defendant Greenwell filed answer (a general denial), but no further pleadings were filed on behalf of defendant (now respondent) Shelton.

On *August 5, 1963,* Shelton received his discharge in bankruptcy.

On *October 11, 1963,* judgment by default was rendered against Shelton. On *May 25, 1964,* execution was issued.

On *June 5, 1964,* Shelton filed motion to quash the execution, alleging (for the first time, as far as the record shows) that he had been adjudged a bankrupt and had subsequently received his discharge, and that plaintiff had been listed as a creditor in the bankruptcy petition and had received notice thereof.

On *June 11, 1964,* hearing was held on such motion to quash and, over plaintiff's objection, testimony of judgment debtor Shelton was received. He testified in substance that he understood the arrangement he had with plaintiff was that the merchandise remained the property of the plaintiff and that he, Shelton, was selling the shoes as a representative—that the arrangement was "similar to a consignment." He began to have trouble with his creditors and was being pressed by them. He had approximately one thousand dollars which had been derived from the sale of the shoes (whether from sale in ordinary course of business or in bulk is not clear), but he did not deposit such money in the special bank account as provided in the agreement, nor did he remit it to the plaintiff. Instead, such money was put into his own bank account. Finally, he said, in an effort to make composition with his creditors, he sold the whole business (apparently for six thousand dollars) and turned the proceeds to a third person, who was attempting to arrange the composition. This failing, he filed petition in bankruptcy. His evidence does not make clear whether or not the remaining stock of merchandise and the fixtures and equipment were included in the six thousand dollar sale or what happened to them.

He further stated that while he had legal advice concerning plaintiff's suit, he did not authorize any attorney to file the motion to dismiss.

Appellant's first contention is that Shelton had waived any defense in respect to bankruptcy which might have originally been available to him by failing to assert it.

A discharge in bankruptcy does not discharge or extinguish a debt which the bankrupt owes;[1] it is simply a bar to enforcement of liability, a purely personal defense of which the debtor may avail himself, or waive, as he so wishes. If he chooses to avail himself of it as a defense, he should plead and prove it. 8 Remington on Bankruptcy, § 3225, p. 47; 9 Am.Jur. 2d, § 750, p. 560; Chitwood v. Jones, Mo. App., 56 S.W.2d 147; Crandall v. Durham, Mo.App., 141 S.W.2d 148; 348 Mo. 240, 152 S.W.2d 1044; In re Innis (7th Cir.) 140 F.2d 479.

In Missouri, as in other jurisdictions, if the defense of bankruptcy is then available to the defendant, it is an affirmative defense; and, if he fails to plead it, he loses it. Civil Rule 55.10, V.A.M.R.; Sec. 509.090 V.A.M.S.; 8B C.J.S. Bankruptcy § 584, p. 138 et seq.; 8 Remington on Bankruptcy, § 3240, p. 70; Bank of Missouri v. Franciscus, 15 Mo. 303 (213); Helms v. Holmes (4th Cir.) 129 F.2d 263, 141 A.L.R. 1367; see Standley v. Western Auto Supply Co., Mo.App., 319 S.W.2d 924, 929.

The requirement that an affirmative defense be pleaded is not a mere technicality. It is necessary to the fair and orderly administration of justice. White v. Wilks, Mo., 357 S.W.2d 908, 913. Whether the judgment be referred to as res judicata, or whether the result be termed simply "estoppel by judgment," or waiver, the failure to tender an issue which is available prior to rendition of the judgment precludes its being raised thereafter in a proceeding between the same parties involving the same thing. Reis v. LaPresto,

Mo., 324 S.W.2d 648; Abeles v. Wurdack, Mo., 285 S.W.2d 544; Kansas City to Use of Missouri Pac. R. Co. v. Southern Surety Co., Mo.App., 51 S.W.2d 221; see cases West's Missouri Digest, Judgment, ⊜713(2). And, in the absence of legal excuse for failure to so plead, or irregularity in the proceedings, or some reason which appeals to the conscience of a court of equity,[2] the rule applies to default judgments. 50 C.J.S. Judgments § 650, p. 92; 128 A.L.R. 472, 483, 77 A.L.R.2d 1414; 8B C.J.S. Bankruptcy § 584, p. 140, Notes 11 et seq.; Helms v. Holmes (5th Cir.) 129 F.2d 263; Tune v. Vaughan, 170 Ark. 971, 281 S.W. 906; Bank of Missouri v. Franciscus, supra, 15 Mo. 303.

In this case the defendant was in court. The judgment was not taken until October 11, 1963. He had from June 22, 1962, the day he was adjudged a bankrupt, to at least suggest the bankruptcy proceedings and request a stay. [See In re Innis (7th Cir.) 140 F.2d 479]. And he had from August 5, 1963, the day he received his discharge, until October 11, to plead his discharge. Yet he remained in default. The defendant did not assert fraud, mistake, irregularity, or any reason (other than the fact of bankruptcy) why the judgment and execution were not valid and operative. We are of the opinion that he is bound by the judgment. This being so, it is unnecessary to consider appellant's further contentions in regard to whether the debt was excepted under the provisions of the Bankruptcy Act. The judgment is reversed and the execution is reinstated.

STONE and HOGAN, JJ., concur.

---

1. But see Gore v. Gorman's Incorporated (W.D.Mo.) 143 F.Supp. 9, 12.

2. See Personal Industrial Loan Corp. v. Forgay (10th Cir.) 240 F.2d 18; and dissent in Helms v. Holmes, supra, 129 F. 2d 263.